## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| DERRICK FAVREAU, | ) Docket No. 2:15-cr-00116-NT |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

On May 19, 2020, Derrick Favreau filed an Emergency Motion for Compassionate Release. (ECF No. 108.) Mr. Favreau asserts that he is at high risk of contracting and suffering acutely from COVID-19 at MDC Brooklyn because of a pre-existing asthma condition. The Government opposes compassionate release on the grounds that Mr. Favreau has failed to exhaust his remedies and that he has failed to demonstrate extraordinary and compelling reasons for his release. I agree with the Government.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 1, 2015, Mr. Favreau made his initial appearance on a complaint charging him with possession with intent to distribute cocaine. On June 5, 2015, Mr. Favreau was released on conditions pending trial. After filing a motion to suppress that was denied, Mr. Favreau entered a conditional plea of guilty on July 26, 2016 and was detained pending sentencing. On March 13, 2017, I sentenced Mr. Favreau to 63 months for possession with intent to distribute cocaine. By my calculations, Mr. Favreau has now served roughly 46½ months or approximately 74% of his sentence.

The Bureau of Prisons ("**BOP**"), having considered deductions for good conduct, lists a projected release date of December 30, 2020.

At the time of his sentencing, Mr. Favreau, who is now 36 years old, reported his overall health as "good." Presentence Investigation Report (ECF No. 110-1). The presentence report noted that Mr. Favreau had exercise-induced asthma for which he sometimes used an inhaler or had nebulizer treatments. Medical records showed that the Mr. Favreau had been treated on September 23, 2011 for acute bacterial bronchitis and asthma exacerbation. Within the Bureau of Prisons, Mr. Favreau is listed as having Level 2 Physical Health Care needs, which roughly translates to stable but with a chronic condition. United States Probation Memorandum 1 (ECF No. 110).

Mr. Favreau is incarcerated at Metropolitan Detention Center Brooklyn ("**MDC Brooklyn**"), which was reporting that as of May 20, 2020, no inmates and seven staff members tested positive for COVID-19. The facility has had no COVID-19 related deaths and five inmates and 32 staff members have recovered from the virus.[1] Defense counsel asserts that the numbers are deceptively low due to a dearth of inmate testing. She submits a report by Dr. Homer Venters, former Deputy Medical Director of the Correctional Health Services of New York City, who concluded that as of April 30, 2020 MDC Brooklyn had not implemented "best practices" to slow the

---

[1] As of the date of filing this Order, MDC Brooklyn is reporting that three inmates and six staff have confirmed active cases.

2

spread of COVID-19.[2] Facility Evaluation: MDC COVID-19 Response (ECF No. 108-2).

On April 6, 2020, Mr. Favreau, through counsel, requested the Warden at MDC Brooklyn release him to home confinement under the CARES Act, 18 U.S.C. § 3624. That request was denied on May 2, 2020 because, according to the Warden, the home confinement program did not apply "to inmates in holdover status." Defense counsel surmises that "holdover status" involves transitioning between two BOP facilities. Mot. for Compassionate Release 3.

At the time of his sentencing, I recommended that the BOP consider Mr. Favreau for the BOP's Residential Drug Treatment Program, and it appears that Mr. Favreau was put into that program but failed to complete it. The Pharos House Residential Reentry Center indicates that Mr. Favreau was removed as a program failure. United States Probation Memorandum 1. Defense counsel asserts that Mr. Favreau "was, at one point, released to the custody of a halfway house, where he encountered difficulties with another resident and was sent back to prison." Mot. at 7–8 (ECF No. 108).

---

[2]   Given the severity of the COVID-19 outbreak, and the guidelines outlined by the CDC, Dr. Venters opined that he would have expected that MDC Brooklyn to implement best practices, including: screening of all detainees twice daily; testing of all detainees and staff who possess risk factors and/or symptoms of COVID-19; quarantining all high-risk detainees; following CDC guidelines for management of COVID-19 including the use of appropriate personal protective equipment (such as masks and gloves) and cleaning of common surfaces; providing sufficient disinfecting supplies so detainees can clean high-touch areas or items; providing adequate personal hygiene supplies; providing adequate spacing so that social distancing can be accomplished; training of staff and inmates; collection of real-time data; weekly written updates for detainees and staff.   Facility Evaluation: MDC COVID-19 Response 19–22 (ECF No. 108-2).

## ANALYSIS

Section 3582(c)(1)(A) provides that:

The court may not modify a term of imprisonment once it has been imposed except that—

(1)　In any case—

 (A)　The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

  (i)　Extraordinary and compelling reasons warrant such a reduction . . .

  (ii)　And that such a reduction is consistent with applicable policy statements issued by the Sentencing Guidelines.

Section 1B1.13 governing compassionate release requests provides:

[T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

 (1)(A) Extraordinary and compelling reasons warrant the reduction;

 . . . .

 (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

 (3) The reduction is consistent with this policy statement.

U.S.S.G. 1B1.13.

The Government argues that Mr. Favreau's motion should be denied because he failed to exhaust his administrative remedies as required by the statute. As to exhaustion, defense counsel candidly concedes in her Reply that Mr. Favreau's request to the Warden at MDC Brooklyn was for home confinement under the CARES Act and that it did not seek compassionate release under 18 U.S.C. § 3582(c)(1)(A). Reply 6 (ECF No. 113). Mr. Favreau asks me to conclude that a letter seeking relief under the CARES Act satisfies the administrative exhaustion requirement under § 3582. Because I conclude that Mr. Favreau has not otherwise met the statutory requirements for compassionate release, I sidestep the issue of whether a CARES Act request for release satisfies the exhaustion requirement under the compassionate release statute.

In deciding whether to grant compassionate release, I am directed by the statute and the sentencing guidelines to consider: (1) the 3553(a) factors; (2) whether there are extraordinary and compelling reasons that warrant the reduction; and (3) the safety of others and the community.  18 U.S.C. § 3582(c)(1); U.S.S.G. 1B1.13.

I considered the § 3553(a) factors at Mr. Favreau's sentencing when I determined that the appropriate sentence was 63 months. There is no question that the COVID-19 pandemic creates an added layer of risk for Mr. Favreau, and, arguably that added layer of risk increases the punishment for the offense. But the pandemic increases the risk to all incarcerated individuals, and indeed for all members of society to varying degrees. Although I can imagine conditions of confinement that

5

might be so dangerous as to affect the 3553(a) analysis, the situation at MDC Brooklyn is not so dire as to justify a modification of the term of imprisonment.

Next, I consider whether Mr. Favreau has presented extraordinary and compelling reasons to warrant a reduction in sentence. Compassionate release is an extraordinary remedy that has been historically reserved primarily for those who are very ill, very old, or some combination of the two. Mr. Favreau is a 36-year-old man with no exceptional family circumstances who has had asthma which requires occasional use of medication. While COVID-19 is understood to be an illness which affects the respiratory system, I am not convinced that Mr. Favreau is so compromised that he should qualify for early release.

In every request for compassionate release, the safety of the community must be considered. U.S.S.G. 1B1.13. I do not have enough facts to conclude that Mr. Favreau is not a danger to the safety of any other person or to the community. Mr. Favreau's failure at the halfway house is not explained in any meaningful way. At the end of the day, the factors, whether alone or in combination, are not enough to tip the analysis toward granting the request for compassionate release.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Mr. Favreau's Motion for Compassionate Release.

SO ORDERED.

/s/ Nancy Torresen  
United States District Judge

Dated this 11th day of June, 2020.